UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BETTY JEAN GARDNER, as the personal representative of the estate of Nathaniel Blake Dorough,<br><br>    Plaintiff,<br><br>vs.<br><br>JOHN SAMANIEGO and EVAN McKEE JAMISON,<br><br>    Defendants. | Civil Action Number<br>**2:18-cv-01336-AKK** |

## MEMORANDUM OPINION AND ORDER

This action arises out of the tragic death of Betty Jean Gardner's nephew, Nathaniel Blake Dorough. Dorough suffered from severe mental illness, and died after Deputy Evan McKee Jamison shot him in the home Dorough shared with his father. Gardner asserts claims against Jamison in his individual capacity under 42 U.S.C. § 1983. Doc. 20 at 4-5. She also asserts claims against John Samaniego, the Sheriff of Shelby County, in his official capacity, under § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("§ 504"), based on her contention that the Sheriff failed to properly train deputies to respond to calls involving people with mental illnesses. *See* docs. 1; 20 at 4-5. The Sheriff has

moved to dismiss the claims against him, doc. 5,[1] arguing that he is immune from suit and that Gardner failed to state a claim for which relief can be granted. For the reasons discussed below, the motion is due to be granted.

I.  **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. When evaluating

---

[1] Since responding to the motion to dismiss, doc. 9, Gardner has amended her complaint twice in order to correctly identify Jamison, docs. 10 and 17. Because the only substantive difference between the original complaint and the amended complaints is that the later complaints identify a named individual for an unnamed defendant, and the allegations against the Sheriff remain the same, *see* docs. 1, 12, 20, the arguments raised in the Sheriff's motion to dismiss apply equally to the amended complaints. Accordingly, when granting Gardner's motion to amend, the court (Chief Magistrate Judge John Ott) advised Gardner that it would still consider the arguments raised in the Sheriff's pending motion to dismiss. *See* doc. 11.

a motion brought under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 (explaining that "[f]actual allegations [included in the complaint] must be enough to raise a right to relief above the speculative level.").

## II. FACTUAL BACKGROUND

Dorough, who suffered from schizophrenia and other psychiatric diagnoses, lived with his father. Doc. 20 at 2. This tragic incident occurred when Dorough had a mental health crisis at his home, and his father called 911. *Id.* Jamison and another deputy were dispatched to the home, where Dorough's father waited outside. *Id.* Upon arrival, the deputies learned from Dorough's father that Dorough had a mental disability, was experiencing a mental health crisis, and had not committed any crimes. *Id.* at 3. Even so, Jamison entered the home without

3

consent and before formulating a plan for approaching Dorough. *Id.* Once in the home, Jamison saw Dorough "crouched in a corner holding a short stick with small nails hammered into it, and shot [and killed] him without justification when Dorough refused to drop the stick." *Id.* Gardner asserts that Deputy Jamison would not have killed her nephew if the Sheriff had properly trained the deputies on how to handle mentally ill individuals. *Id.* at 4.

III. **ANALYSIS**

Gardner asserts a § 1983 claim against the Sheriff in his official capacity for unlawful entry and claims under the ADA and § 504 based on a failure to accommodate theory. Doc. 20 at 5-7. The Sheriff has moved to dismiss based on immunity under the Eleventh Amendment, and on the failure to state a claim upon which relief may be granted. The court addresses these contentions in turn.

    A. **Whether the Sheriff is Immune from Suit**

The Sheriff argues that Gardner's claims against him in his official capacity are barred by the Eleventh Amendment. *See* doc. 5 at 12-13. Under the Eleventh Amendment, a state is immune from suit in federal court unless the state waives its immunity or a superseding federal act abrogates the state's immunity. U.S. Const. amend. XI; *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). A state's sovereign immunity applies to suits brought against a state official in his official capacity "when 'the state is the real, substantial party in interest.'" *Carr v. City of*

*Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990) (quoting P*ennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 120 (1984)). Moreover, "a sheriff is an executive officer of the state of Alabama" and is protected by the Eleventh Amendment when, as here, he is sued for damages in his or her official capacity under § 1983. *Id.* at 1525. Therefore, becuase Alabama has not consented to suit and "Congress has not abrogated eleventh amendment immunity in section 1983 cases," *id.* (citations omitted), the Eleventh Amendment bars Gardner's § 1983 claim against the Sheriff.[2]

A different analysis applies, however, to Gardner's ADA and § 504 claims. Title II of the ADA "provides that 'a State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in a Federal or State court of competent jurisdiction for a violation of this chapter.'" *United States v. Georgia*, 546 U.S. 151, 154 (2006) (quoting 42 U.S.C. § 12202) (alteration omitted). Moreover, "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159. In this case, Gardner asserts a Title II claim based on her allegations that the Sheriff violated the ADA by failing to train deputies to respond to people with mental

---

[2] The § 1983 claim against the Sheriff is also due to be dismissed because "state officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983. *Carr*, 916 F.2d at 1525 n.3 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)).

5

illness and, as a result, Jamison shot and killed Dorough without justification. *See* doc. 20 at 6. Thus, Gardner's ADA claim is based on alleged violations of the Fourteenth and Fourth Amendment. *See* U.S. Const. amends. IV; XIV, § 1. Therefore, because Title II validly abrogates state sovereign immunity for alleged constitutional violations, the Sheriff has not shown that the claim is barred by the Eleventh Amendment.

Finally, state agencies that receive federal funds waive their Eleventh Amendment immunity for § 504 claims. *Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees*, 344 F.3d 1288, 1293 (11th Cir. 2003) (per curiam). Here, Gardner alleges that the Sheriff "receives federal funds for his law enforcement program," doc. 20 at 6, and that allegation is entitled to a presumption of truth at this stage in the case, *see Hunt*, 814 F.3d at 1221. Consequently, at this juncture, the § 504 claim is also not due to be dismissed based on Eleventh Amendment immunity.

### B. Whether Gardner States Viable ADA and §504 Claims

"Title II of the ADA prohibits a 'public entity' from discriminating against 'a qualified individual with a disability' on account of the individual's disability." *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1081 (11th Cir. 2007) (quoting 42 U.S.C. § 12132).[3] To state a claim under Title II of the ADA and § 504, a plaintiff

---

[3] Similarly, § 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his disability, be excluded from the participation in, be denied the

6

must allege facts showing "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participating in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll*, 480 F.3d at 1083. *See also Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (listing the elements of a claim under the Rehabilitation Act); *Cash v. Smith*, 231 F.3d 1301, 1305, n.2 (11th Cir. 2000) ("Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa.") (citation omitted). In addition, "[t]o state a claim for compensatory damages under [the ADA and § 504], a private plaintiff must show that the defendant acted 'with discriminatory intent.'" *Boynton v. City of Tallahassee*, 650 F. App'x 654, 658 (11th Cir. 2016) (quoting *McCullum v. Orlando Reg. Healthcare Sys., Inc.*, 768 F.3d 1135, 1146-47 (11th Cir. 2014)).[4] To show such intent, a plaintiff must allege facts showing "the defendant either intentionally discriminated against the plaintiff or was 'deliberately indifferent to his statutory rights.'" *Id.* (quoting *McCullum*, 768 F.3d at 1147). Deliberate indifference requires "that the defendant 'knew that harm to a

---

benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

[4] Gardner seeks both compensatory and punitive damages, doc. 20 at 7, but "punitive damages are not available in private suits under [the ADA or the Rehabilitation Act.]" *Boynton*, 650 F. App'x at 658 n.4 (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)).

federally protected right was substantially likely' and 'failed to act on that likelihood.'" *McCullum*, 768 F.3d at 1147 (quoting *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012)).

Turning to the specifics here, Gardner alleges that the Sheriff violated Title II and § 504 by failing to train deputies to respond to people with mental illnesses despite knowing of the need for such training. Doc. 20 at 4, 6. A sheriff may be liable for a failure to train deputies "when 'the failure to train amounts to deliberate indifference to the rights of persons with whom the [deputies] come into contact.'" *Knight Through Kerr v. Miami-Dade County*, 856 F.3d 795, 820 (11th Cir. 2017) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). "To establish 'deliberate indifference, a plaintiff must present some evidence that the [sheriff] knew of a need to train . . . in a particular area and the [sheriff] made a deliberate choice not to take any action.'" *Id.* (quoting *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)). Here, however, Gardner has not alleged sufficient facts to give rise to a plausible inference that the Sheriff knew of a need to train deputies regarding how to respond to people with mental illnesses and deliberately chose not to do so. *See* doc. 20. Instead, Gardner simply alleges that the Sheriff "failed and refused to train his deputies regarding handling mentally ill persons despite knowledge of a need for such training." *Id.* at 4. Because such conclusory allegations are not entitled to a presumption of truth, *see Iqbal*, 556 U.S. at 681,

Gardner does not plausibly allege that the Sheriff acted with deliberate indifference in failing to train the deputies, and her Title II and § 504 claims based on the alleged failure to train are due to be dismissed.

Still, Gardner asserts that her Title II and § 504 claims should survive because she plausibly alleges that Jamison failed to accommodate Dorough's disability and that the Sheriff is vicariously liable for Jamison's actions. Doc. 9 at 7-9. Gardner correctly notes that the ADA and §504 provides for "*respondeat superior* liability of the employer for the acts of its agents." *Mason v. Stalling*, 82 F.3d 1007, 1009 (11th Cir. 1996)). *See also T.W. ex rel Wilson v. School Bd. of Seminole County, Fla.*, 610 F.3d 588, 604 (11th Cir. 2010) (assuming without deciding that § 504, like the ADA, allows an employer to be vicariously liable for an employee's actions). In this case, however, the alleged failure to accommodate stems directly from the Sheriff's alleged failure to train the deputies. *See* doc. 20 at 4 ("If Jamison and the other deputy had received [adequate] training, the shooting of Dorough was easily avoided. . . . Because the deputies were not trained in handling mentally ill persons, the deputies failed to accommodate Dorough."). Accordingly, Gardner's claims against the Sheriff based on vicarious liability for Jamison's alleged actions are, in essence, duplicative of her claims based on the Sherriff's alleged failure to train. In addition, Gardner did not allege facts to suggest that Jamison intentionally discriminated against Dorough based on

his disability, or that Jamison was deliberately indifferent to Dorough's rights under the ADA and § 504. Rather, Gardner expressly alleges that Jamison failed to accommodate Dorough because Jamison was "not trained in handling mentally ill persons . . . ." Doc. 20 at 4. Consequently, Gardner has not plausibly alleged that Jamison acted with discriminatory intent, *see McCullum*, 768 F.3d at 1147, and she failed to state plausible Title II and § 504 claims against the Sheriff based on Jamison's alleged actions.[5]

## IV.  CONCLUSION AND ORDER

For the foregoing reasons, the Sheriff's motion to dismiss, doc. 5, is **GRANTED**, and Gardner's claims against Sheriff Jon Samaniego are **DISMISSED WITHOUT PREJUDICE**.

Finally, the court **ORDERS** Gardner to perfect service on Jamison by May 31, 2019.

**DONE** the 17th day of May, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[5] Gardner reliance on *Bircoll v. Miami-Dade County*, 480 F.3d 1072 (11th Cir. 2007), to argue against dismissal of her Title II and § 504 claims, *see* doc. 9 at 7-8, is unavailing. *Bircoll* did not involve any allegations that the County or Sheriff may be liable based on a failure to train deputies. *See* 480 F.3d 1072. In addition, *Bircoll* does not address the deliberate indifference standard that applies to claims for compensatory damages under Title II and § 504. *See id.*